IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MARCUS ODELL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 10-2913-STA |
| | ) |
| IFCO SYSTEMS, N.A., INC., | ) |
| | ) |
|     Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant IFCO Systems, N.A., Inc.'s Motion for Summary Judgment (D.E. # 8) filed on December 15, 2011. Plaintiff Marcus Odell's response brief was due no later than January 16, 2012. On January 23, 2012, the Court ordered Plaintiff to respond to Defendant's Motion within one week, making Plaintiff's response due on or before January 30, 2012. Plaintiff finally filed a response brief on February 2, 2012. A bench trial in this matter is currently set for March 19, 2012. For the reasons set forth below, Defendant's Motion is **GRANTED**.

**BACKGROUND**

The following facts are not in dispute in this case.[1] Defendant IFCO is a worldwide leading

---

[1] Plaintiff has admitted forty-four of the fifty-four statements asserted in support of Defendant's Motion for Summary Judgment. With respect to the other ten statements of undisputed fact, Plaintiff has only responded that he cannot agree to the assertion without further proof other than proof offered by Defendant's agents. Plaintiff does not argue that these ten facts are not supported by admissible evidence. *See* Fed. R. Civ. P. 56(c)(2). At this stage of the litigation, Plaintiff has the burden to show why triable issues remain in spite of the evidence Defendant has presented. Therefore, Plaintiff's qualified fail to demonstrate "that the fact is disputed." Local Rule 56.1(b)(3).

1

logistics services provider of reusable plastic containers and pallet-management services. (Grant Aff. ¶4). Plaintiff Marcus Odell was initially employed as a commercial driver for IFCO on January 31, 2005. (Odell Dep., ex. 4, Employee Exit Information Form.) As a commercial driver, Odell primarily delivered pallets to various locations in the Memphis metro area. (*Id.* at 43:6–15; 47:3–14). At IFCO, Plaintiff generally worked 5 days a week from 7:00 A.M. to 3:30 P.M. or 7:00 A.M. until finish. (*Id.* at 43:19-24.) After making a delivery, drivers like Odell either had to have pallets loaded back onto their trailers or they would receive instructions from IFCO management to go to another location where pallets needed to be picked up. (*Id.* at 45:12–46:23.) Plaintiff generally would make five to seven trips per day while employed as a driver for IFCO. (*Id.* at 46:24–47:2.)

Plaintiff testified that when he made deliveries, he would have to go into the office and talk with someone, or sometimes he would go into the warehouse and talk to a floor manager or supervisor. (*Id.* at 48:11–24.) According to Plaintiff, he did more sitting in his truck at a location than driving and that there was a 50-50 division between actual driving and non-driving work time. (*Id.* at 50:20–52:5.) Plaintiff testified that a driver has to get out of the truck at a delivery location and perform job duties outside the truck (*Id.* at 61:2–62:1.) In addition to getting out of the truck to talk to individuals at the delivery location, Odell testified that he had to perform job duties outside of his assigned truck eight to nine times each work day and that these outside-the-truck work activities took approximately five to ten minutes on each occasion. (*Id.*) Plaintiff testified that when he got out of his truck to talk to an individual at each delivery location, the conversation could take anywhere from 20 to 30 minutes per stop. (*Id.*)

Plaintiff received the IFCO employee handbook and the driver's handbook about a year prior to being terminated. (*Id.* at 64:19–68:20). Plaintiff admitted that a driver can work 14 hours a day

but can only drive 11 hours per day under federal law. (*Id.* at 59:15–60:13.) One of Plaintiff's supervisors at IFCO was Brady Grant ("Grant"), and Plaintiff initially got along well with Grant. (*Id.* at 55:13–21.) Grant became the General Manager of the IFCO Memphis facility in 2007. (Grant Aff. ¶2.) Eddie Jefferson ("Jefferson") became Plaintiff's primary direct supervisor approximately one year before Plaintiff was terminated. (Odell Dep. 57:3–14.)

On November 4, 2009, Plaintiff appeared for work and recorded that he worked for 11.25 hours. (*Id.* at 79:25–80:4; 86:7–87:7.) That day Plaintiff recorded five stops during his work day and recorded 142 miles of driving. (Grant Aff. ¶17.) After getting back from runs at the end of the day on November 4, 2009, Grant asked Plaintiff to move some trailers around in the yard. (Odell Dep. 79:25–80:13.) Plaintiff advised Grant that he was at his 11-hour work limit, to which Grant responded not to worry about it. (*Id.* at 80:10–18.) Plaintiff then spent about 15 to 20 minutes moving a few trailers around in the yard. (*Id.* at 80:19–21.)

Plaintiff later received a copy of the November 4, 2009 logbook in his company mailbox with an additional log page, a different one, attached to it indicating that he needed to transfer the information from the original log to the new log sheet to cover the 15-minute overage on his original log. (*Id.* at 80:22–81:5.) Plaintiff testified that he always used the Keller 12-hour "exempt" logbook. (*Id.* at 83:13–14). Prior to working for IFCO, Odell had used the regular, 24-hour logbooks. (*Id.* at 84:3–5.) The 12-hour "exempt" log he was using simply shows off-duty and on-duty time and does not distinguish between driving time and on-duty time. (*Id.* at 85:11–16.)

On November 4, 2009, Plaintiff went into work at 5:00 A.M. and went off work at 4:10 P.M. (*Id.* at 86:7-10). Grant did not tell Odell to hide the overage but stated that he wanted the information transferred to a different log book. (*Id.* at 89:6–17.) The logbook that Grant asked

3

Plaintiff to transfer the information to was a 24-hour logbook. (*Id.* at 94:2–21.)  IFCO had approximately eight drivers when Odell was employed there. (*Id.* at 90:1–5.)  Traditionally, IFCO drivers at the Memphis facility used the "exempt" logbook to keep up with their time; whereas, the IFCO drivers in Horn Lake used the 24-hour logbooks. (*Id.* at 90:13–24).  When the Memphis and Horn Lake IFCO locations were combined, the former Horn Lake drivers continued using the 24-hour logbook, yet Odell and other Memphis drivers were still using the "exempt" logbook. (*Id.* at 90:20–24.)  The former Horn Lake IFCO drivers now at the Memphis facility performed the same work as Plaintiff did but used the 24-hour logbooks. (*Id.* at 90:25–91:3.)  All Memphis-based IFCO Drivers now use the same 24-hour logbook, and no other driver previously using an "exempt" logbook refused to change to the 24-hour logbook  (Grant Aff. ¶5.)

When Plaintiff told Grant that it is "legally impossible" to transfer information, Grant told Plaintiff not to worry about it and gave him the 24-hour logbook to use instead of the exempt logbook from that day forward. (*Id.* at 94:10-96:7.)  Plaintiff told Grant that using the 24-hour logbook was against company policy and against federal regulations, and so he could not do it. (*Id.* at 96:8–10.)  According to Plaintiff, Grant told him that he needed to use the 24-hour logbook going forward or face termination. (*Id.* at 96:8–16.)  After Plaintiff advised Grant that he did not feel comfortable using the 24-hour logbook, Grant told Plaintiff to meet him in the conference room. (*Id.* at 97:10-23).  Approximately 30 minutes later, Grant came to the conference room along with Jefferson with termination papers, at which time Grant advised Plaintiff that he was being terminated for his confrontational behavior. (*Id.* at 101:19–102:7; ex. 4.)

Insubordination and accumulated discipline are listed as grounds for termination in the IFCO employee handbook. (Employee Handbook 25–27.)  Plaintiff had received three disciplinary actions

4

prior to his termination. (Odell Dep., ex. 4, Disciplinary Reports.) Plaintiff received an oral reprimand on September 12, 2007, and was banned from delivering to GSK Swinnea due to violating safety rules. (*Id.* at 71:21–72:5; ex. 4.) Plaintiff also received a written warning on September 12, 2008, for not signing time cards. (*Id.* at 72:16– 73:8; ex. 4.) Plaintiff was also disciplined on January 23, 2009, for inappropriate conduct after he engaged in a verbal exchange with a representative from Thomas & Betts, one of IFCO's customers, and was banned from Thomas & Betts after the incident except in an emergency. (*Id.* at 74:9–75:7; 78:7–19; ex. 4.)

Under Federal Motor Highway Safety Regulations, commercial drivers like Plaintiff may drive up to 11 hours and be on duty for 14 hours. (*Id.* ¶ 6.; ex. 1.) Time spent by a commercial driver outside of the truck is counted toward the 14 hours of on-duty time but does not count toward the 11-hour driving time limit. (*Id.* ¶ 7; ex. 1.) The Federal Motor Highway Safety Regulations define driving time as "all time spent at the driving controls of a commercial motor vehicle in operation." (*Id.* ¶ 9; ex. 1.) Grant has stated that he was not aware of any federal or state law that requires a driver to continue to use an "exempt" logbook in lieu of changing to a standard 24-hour logbook (*Id.* ¶10.) The Federal Motor Highway Safety Regulations under "Driver's Record of Duty Status" ("RODS") sets forth the requirements for commercial drivers to maintain their logbooks and only mentions the standard 24-hour logbook. (*Id.* ¶11; ex. 1.) The Federal Motor Highway Safety Administration, in its "Hours of Service Frequently Asked Questions," states that not using the "Driver's Record of Duty Status" is optional where the driver meets the 100 mile air-radius exception. (*Id.* ¶12; ex. 2.) The only difference between a 12-hour logbook and the standard 24-hour logbook referenced in the FMCSA Regulations is that the 24-hour logbook provides a place to list driving time and non-duty time as well as off-duty time. (*Id.* ¶13; exs. 1 & 3.)

5

Plaintiff generally operated within a 100-mile radius of Memphis and on most days was exempt from the requirement of maintaining the standard 24-hour logbook under the RODS regulations. (*Id.* ¶15.) Grant decided to have all Memphis drivers who sometimes operated outside the 100-mile radius exemption start using the standard 24-hour logbook since is it is required to be used for any day that the exemption does not apply and because several Memphis drivers were already using the standard 24-hour logbook at all times. (*Id.* ¶16.)

Finally, Plaintiff's employment with IFCO was on an at-will basis. (*Id.* ¶14, ex. 4; Odell Dep., ex. 3.) IFCO is a private, non-governmental entity. (*Id.* at 171:21–172:1.)

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving part "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[3] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[4] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[5] These facts must be more than a scintilla of evidence and must meet the standard of whether

---

[2] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Celotex*, 477 U.S. at 324.

[5] *Matsushita*, 475 U.S. at 586.

a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[6] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[7]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8] In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[9] Finally, the "judge may not make credibility determinations or weigh the evidence."[10] Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[11]

## ANALYSIS

The Court begins by noting that Plaintiff failed to file a timely response in opposition to Defendant's Motion. As a result, the Court entered an order directing Plaintiff to respond to the Motion by a date certain. Even then Plaintiff did not respond until three days after the Court's

---

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7] *Id*. at 251-52.

[8] *Celotex*, 477 U.S. at 322.

[9] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[10] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[11] Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 322.

deadline. Despite Plaintiff's failure to file a timely response and his disregard for the Court's order, the Court has considered Plaintiff's brief in ruling on Defendant's Motion. The Court finds that Plaintiff's brief offers little or no assistance in reaching the merits of Defendant's Motion for Summary Judgment. In fact, the brief refers in several instances to "Pamela Perkins" who is not a party to this action and argues irrelevant legal issues such as "cost-containment decisions" and Plaintiff's allegation "that her race, sex, and prior protected activity were considered by the agents of Defendant in the employment action taken against her."[12] Moreover, Plaintiff has inexplicably failed to brief his claim for due process violations. To the extent that the brief does actually address Tennessee common law retaliatory discharge, Plaintiff cites case law and does not argue how the cases cited support his claim.[13] Other than conclusory assertions such as a "retaliatory factor motivated the employer's decision to terminate Marcus Odell," Plaintiff has not attempted to apply relevant law to the facts of his case. Accordingly, the Court concludes that the brief fails to demonstrate why Defendant's Motion should not be granted.

Defendant seeks summary judgment on Plaintiff's claims for common law retaliatory discharge and for the violation of his procedural and substantive due process rights secured by the U.S. Constitution. Therefore, the Court is left to analyze each Plaintiff's claims.

**I.     Common Law Retaliatory Discharge**

---

[12] See Pl.'s Resp. in Opp'n 5, 7, 9, 10. At one point Plaintiff also refers to a "disagreement between the employee and the employer about interpretations of various provisions of the Internal Revenue Code." *Id.* at 8. It is not at all clear whether this reference is a quotation from a case (no case is cited) or simply a statement included in the brief by mistake.

[13] In some places, it is not clear to the Court whether Plaintiff is simply citing a case or quoting a case. For example, it is not clear whether the text appearing in small type on page 8 of the brief is a quotation or just Plaintiff's discussion of the case. For no apparent reason, Plaintiff's brief includes a number of typefaces and font sizes.

Tennessee common law provides a cause of action for retaliatory discharge. In order to state such a claim, a plaintiff must establish the following elements: (1) an employment at-will relationship; (2) a clear declaration of public policy which imposes duties upon the employee or employer; and (3) discharge of the employee where his refusal to violate those duties is a substantial factor in his termination.[14] Under Tennessee law, the relevant inquiry is not simply "whether a law or regulation has been violated but rather . . . whether some important public policy interest embodied in the law has been furthered by the employee's actions."[15] In this case Plaintiff has alleged that he was instructed to violate a "clear declaration of public policy" by transferring time to a different logbook and then using a 24-hour logbook, in lieu of the 12-hour "exempt" book, to document his drive time. The Court holds that Plaintiff has failed to adduce evidence that he was discharged for his refusal to violate any regulations. Therefore, summary judgment in favor of Defendant is proper on this claim.

According to the Motion for Summary Judgment, Plaintiff and all other commercial truck drivers were subject to the United States Department of Transportation ("DOT") and Federal Motor Carrier Safety Administration Regulations ("FMCSAR") on Hours of Service.[16] Plaintiff was subject to the regulation's 11-hour driving limit, meaning Plaintiff was authorized to drive a

---

[14] *Crews v. Buckman Laboratories Intern., Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002). *See also Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716-17 (Tenn. 1997); *Reynolds v. Ozark Motor Lines, Inc.,* 887 S.W.2d 822, 825 (Tenn. 1994); *Anderson v. Standard Register Co.,* 857 S.W.2d 555, 558 (Tenn. 1993); *Chism v. Mid-South Milling Co.,* 762 S.W.2d 552, 556 (Tenn. 1988).

[15] *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d 521, 532 (Tenn. Ct. App. 2006).

[16] 49 C.F.R. § 395.1.

maximum of 11 hours after 10 consecutive hours off duty.[17] Plaintiff was also subject to a 14-hour, on-duty limit, meaning he could not be on duty beyond the fourteenth consecutive hour after coming on duty after 10 consecutive hours off duty.[18] The Federal Motor Highway Safety Regulations define driving time as "all time spent at the driving controls of a commercial motor vehicle in operation."[19] Plaintiff was also subject to the federal regulations on Record of Duty Status ("RODS").[20] The RODS states that the 24-hour log is required unless an exemption applies and then use of the 24-hour log is optional. One such exemption is the 100 air-mile radius, short haul exemption, which generally applied to Plaintiff and most of the other IFCO drivers in Memphis.[21] "Short-haul operations" were exempted from keeping the 24-hour log if the driver operated "within a 100 air-mile radius of the normal work reporting location."[22] In this case, it is undisputed that Defendant permitted Plaintiff to use the optional, 12-hour logbook, and not the 24-hour logbook, since he generally qualified for the short haul exemption.[23] Moreover, the regulations require that a commercial driver use the 24-hour logbook for any day that the short haul exemption does not apply or simply at all times instead of the "exempt" log at direction of the employer.[24] Finally, the

---

[17] § 395.3.

[18] *Id.*

[19] § 395.2.

[20] § 395.8.

[21] §§ 395.3; 395.1(e).

[22] § 395.1(e).

[23] § 395.1.

[24] *Id.*; § 395.8.

regulations state that "[f]ailure to complete the record of duty activities . . ., failure to preserve a record of such duty activities, or making of false reports in connection with such duty activities shall make the driver and/or the carrier liable to prosecution."[25]

Based on the regulations concerning logbooks and the logging of drive time, the Court concludes that Plaintiff cannot show Defendant discharged him for his refusal to violate the regulations. As a result, Plaintiff cannot prove his claim for common law retaliation. It appears to be undisputed that Plaintiff qualified for the short-haul exemption and therefore was not required to complete a 24-hour logbook for his work-related duties. Furthermore, there is no evidence that Plaintiff did not qualify for the exemption on the day when Defendant directed him to transfer his time to the 24-hour logbook. Perhaps most importantly, there is no evidence that Defendant directed Plaintiff not "to complete the record of [his] duty activities" for the day in question or not "preserve a record of such duty activities" or to make "false reports in connection with such duty activities."

On the contrary, the evidence shows that Defendant simply instructed Plaintiff to transfer his time to a new, 24-hour logbook and discontinue using the 12-hour "exempt" logbook. Defendant made the decision to have all of its commercial truck drivers use the 24-hour logbook, and not the "exempt" 12-hour book. Nothing in the regulations cited suggest that generally exempt drivers like Plaintiff could only use a 12-hour logbook and could not use a 24-hour logbook, only that the regulations did not require the use of the 24-hour logbook. Upon inspection, the Court finds that the 24-hour logbook actually provides for more-detailed documentation of a commercial truck driver's job duties and thereby advances the safety purposes of the regulation. Without some evidence that Defendant was in violation of the DOT safety regulations, Plaintiff cannot show that Defendant

---

[25] § 395.8.

directed him to violate duties imposed by a clear declaration of "important public policy concerns."[26] Therefore, Plaintiff has failed to prove his common law retaliatory discharge claim, and Defendant's Motion for Summary Judgment is **GRANTED** as to this issue.

## II. Procedural and Substantive Due Process Claims

Plaintiff has further alleged that Defendant violated his procedural and substantive due process rights by discharging him without a "pre-disciplinary meeting or a pre-termination hearing."[27] The Sixth Circuit has remarked that "an individual may have a property interest in public employment."[28] However, this Court is aware of no authority that would entitle an at-will employee working in the private sector to any due process protections. Defendant correctly cites Tennessee case law holding that even at-will public employees are not entitled to the kind of "pre-termination hearing" which Plaintiff believes he was denied.[29] Therefore, the Court concludes that Defendant is entitled to summary judgment as to this claim.

For these reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

---

[26] *Franklin*, 210 S.W.3d at 531. *See also Fleming v. Xerox Connect, Inc.*, 50 F. App'x 211, 214 (6th Cir. 2002) (applying Tennessee law and holding that because "no reasonable factfinder could find that Xerox was clearly engaged in illegal conduct that jeopardized the public good . . ., the plaintiff's 'refusal to remain silent' . . . could not have furthered the kind of important public policy interest contemplated by the whistleblower exception to the employment-at-will doctrine.").

[27] Compl. ¶ 13.

[28] *Beech v. Fuller*, 172 F. App'x 111, 113 (6th Cir. 2006) (applying Tennessee law).

[29] *E.g. Thompson v. Memphis Light, Gas and Water*, No. W2009-02447-COA-R3-CV, 2011 WL 1642614, at *8 (Tenn. Ct. App. Oct. 18, 2011).

**IT IS SO ORDERED.**

                                                   **s/ S. Thomas Anderson**
                                                   S. THOMAS ANDERSON
                                                   UNITED STATES DISTRICT JUDGE

                                                 Date: February 8, 2012